OPINION
{¶ 1} Appellant, VS. ("mother"), appeals the decision of the Warren County Court of Common Pleas, Juvenile Division, regarding issues related to paternity and parenting time.
 {¶ 2} According to the record before this court, mother approached a work acquaintance, J.M., about being a sperm donor so that she could conceive a child. Mother indicated to J.M. that she wanted him to be considered a "friend" or "uncle" to the child. The child, R.A.S., was allegedly conceived by some form of artificial insemination, but mother did not disclose the procedure involved. There was no claim that a physician or a person under *Page 2 
a physician's supervision participated in the artificial insemination procedure.
 {¶ 3} J.M. informed mother shortly before the child was born that he wanted to fulfill the role of father to the child. The child was born in April 2005. J.M. filed a motion with the juvenile court, asking first for visitation, and later amending his pleading to request a determination of paternity and parenting time. Mother now presents three assignments of error on appeal of the juvenile court's determination of paternity and grant of parenting time to J.M.
 {¶ 4} Assignment of Error No. 1:
 {¶ 5} "THE COURT ERRED IN ITS FINDING THAT MOTHER'S OBJECTION, AS TO THE DETERMINATION OF CHILD'S PATERNITY, WAS MOOT PURSUANT TO THE COURT'S JANUARY 3, 2006 ENTRY."
 {¶ 6} Before we discuss mother's first assignment of error, additional portions of the procedural history of this case must be provided.
 {¶ 7} A juvenile court magistrate issued a decision on January 3, 2006, adjudicating J.M. as the natural father of the child, based upon paternity testing results. The magistrate ordered that a new birth certificate be issued and a new birth record prepared. The decision included an order of the juvenile court that informed the parties that the decision would become the order of the court unless written objections were filed within 14 days from the date of filing.[1] No objections were filed.
 {¶ 8} An evidentiary hearing was held later on the issue of visitation. The magistrate issued a decision on March 22, 2006, in which he addressed mother's argument presented for that hearing that R.C.3111.95(B), which is part of the nonspousal artificial insemination statutes, precluded J.M. from being regarded at law as the natural father of the child and *Page 3 
affording him such rights as visitation. The magistrate found that the statutory scheme of R.C. 3111.88 through R.C. 3111.95 did not apply in this case because none of the requirements of the statutes were met. The magistrate also granted visitation for J.M. and set a child support hearing.
 {¶ 9} Mother objected to the decision of the magistrate. The objections stated that the magistrate's decision regarding J.M.'s visitation schedule did not account for the fact that mother was still breastfeeding. In addition, the objections contested the magistrate's refusal to apply the nonspousal artificial insemination statutes.
 {¶ 10} In overruling the objections, the juvenile court found that mother had failed to object or appeal the January 3, 2006 decision that adjudicated J.M. as the natural father, and, therefore, mother's failure to object or appeal rendered the paternity determination "moot." The juvenile court also found that visitation was reasonable.
 {¶ 11} A hearing was held in October 2006, and according to the transcript of those proceedings, the parties came to a number of agreements to be memorialized at a later date.
 {¶ 12} Mother filed her appeal on January 24, 2007, appealing from the January 5, 2007 decision. The January 5, 2007 decision was an agreed entry that addressed such issues as parenting time and child support.
 {¶ 13} Mother argues on appeal that the juvenile court erred in overruling her objection of the paternity finding as she was not required to appeal the decision at that time.
 {¶ 14} First, we note that R.C. 3111.95(B) states: "If a woman is the subject of a non-spousal artificial insemination, the donor shall not be treated in law or regarded as the natural father of a child conceived as a result of artificial insemination, and a child so conceived shall not be treated in law or regarded as the natural child of the donor. No action or proceeding under sections 3111.01 to 3111.18 or sections3111.38 to 3111.54 of the Revised Code shall affect these consequences." *Page 4 
 {¶ 15} R.C. 3111.95(B) directly deals with whether a sperm donor shall be treated or regarded at law as the natural father of the child conceived by artificial insemination. In fact, the last sentence of R.C.3111.95(B) states that no proceedings under the establishment of paternity sections of the Ohio Revised Code shall affect the consequences of the nonspousal artificial insemination law.
 {¶ 16} If mother intended to rely upon the nonspousal artificial insemination statutory scheme to prevent J.M. from being recognized as the child's natural father and from receiving the rights and obligations of that finding, those issues should have been raised during the proceedings to establish J.M. as the natural father. We do not agree with the juvenile court's use of the word "appeal." See Renfrow v.Joshi, Montgomery App. No. 19895, 2004-Ohio-1316, ¶ 2-6, 9 (paternity only finding not final appealable order where other issues such as support or counterclaim on support still pending). However, we agree with the juvenile court that mother should have objected to the magistrate's January 3 finding that J.M. was the child's natural father, and she failed to do so. The decision became an order of the court and the child's birth record and certificate were amended accordingly. See Civ.R. 53(D)(3) and (4) and Juv.R. 40(D)(3) and (4).
 {¶ 17} Mother's failure to object to the magistrate's paternity finding did not give the juvenile court the opportunity to address the issue immediately, before this case continued under that finding and addressed such issues as parenting time and child support. In fact, mother did not raise the nonspousal artificial insemination statutes until parenting time or visitation was under consideration.
 {¶ 18} The juvenile court's decision to overrule the paternity objection impliedly finds any attempt to preclude J.M. from being found at law as the natural father was moot, as the issue was already decided when J.M. was found the natural father without objection and the parties moved on to consideration of visitation issues. *Page 5 
 {¶ 19} Mother would not be able to appeal the finding of paternity to this court insofar as she did not object to the magistrate's determination in that regard, and does not claim plain error. See Civ.R. 53(D)(3)(b)(iv) and Juv.R. 40(D)(3)(b)(iv) (except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion unless the party has objected to that finding or conclusion).
 {¶ 20} Mother's first assignment of error is not well taken, and is overruled.
 {¶ 21} Assignment of Error No. 2:
 {¶ 22} "THE COURT ERRED IN ITS FINDING THAT MOTHER AND CHILD WERE PRECLUDED FROM INVOKING THE RIGHTS AFFORDED IN OHIO'S NON-SPOUSAL ARTIFICIAL INSEMINATION STATUTES."
 {¶ 23} As we discussed under the mother's first assignment of error, mother permitted, without objection, the juvenile court to make a finding that J.M. was the child's natural father and order that the child's birth certificate and record be amended to reflect that finding. The juvenile court then proceeded to hold hearings to determine such issues as visitation or parenting time.
 {¶ 24} Mother sought to preclude J.M. from being found the natural father with the rights and obligations associated with that determination. She raised the nonspousal artificial insemination statutes as the legal authority to exclude J.M. as father, but did so at the hearing on visitation. Mother raised the statutory scheme after the very finding she was attempting to prevent had already been made.
 {¶ 25} The magistrate looked at the statutes and found them inapplicable because the parties had failed to follow any of the "essential elements of the statute." See R.C. 3111.90; R.C. 3111.96;CO. v. W.S. (C.P.1994), 64 Ohio Misc.2d 9 (noting failure to adhere to provisions of non spousal artificial insemination law negated mother's attempt to "cloak her pregnancy" under ambit of law); Turchyn v.Cornelius (Aug. 26, 1999), Mahoning App. No. 98 *Page 6 
CA 86.
 {¶ 26} The juvenile court simply found that mother's attempt to now use the statutes to divest J.M. of his parental rights was ineffective after J.M. had been found to be the natural father.
 {¶ 27} We find no error in the juvenile court's determination that the statutes are inapplicable here. Mother's second assignment of error is overruled.
 {¶ 28} Assignment of Error No. 3:
 {¶ 29} "THE COURT ERRED IN ITS FINDING THAT THE DETERMINATION OF PARENTING TIME FOR DONOR WAS FAIR AND REASONABLE UNDER THE CIRCUMSTANCES, WHERE SUCH AWARD WAS NOT SUPPORTED BY COMPETENT, CREDIBLE EVIDENCE."
 {¶ 30} Mother argues on appeal that her decision to utilize J.M. as a donor would have been different had she known that he would "renege" on their agreement and want to have a relationship and visits with the child. Mother attempts to use the issue of visitation to argue against J.M.'s paternity and participation in the child's life.
 {¶ 31} The decision that is the subject of this appeal is an agreed entry of the parties regarding parenting time. This agreement was accepted by the magistrate and adopted by the juvenile court. We have not been directed to any portion of the record that indicates that mother did not agree with this entry. Further, visitation with J.M. was ordered by the juvenile court during the pendency of this case, and we see no indication in the record that this decision was not considered to be in the best interest of the child. Accordingly, mother's third assignment of error is overruled.
 {¶ 32} Judgment affirmed.
BRESSLER, P.J., and POWELL, J., concur.
[1] While the juvenile court did not expressly include the specific language that it was adopting the magistrate's decision, a reading of the language used indicates that the juvenile court did adopt the magistrate's decision as an order of the court. See, generally, Civ.R. 53(D)(4) and Juv.R. 40(D)(4). *Page 1